# EXHIBIT "2"

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**RULE 39 EMERGENCY RELIEF ORDER**

Case Number: 01-25-0009-0846

Kohree, LLC, claimant
v.
Amazon Services, LLC, respondent

---

Claimant seeks emergency relief (ER) pursuant to Rule 39 of the Commercial Arbitration Rules of the American Arbitration Association (AAA). This order adjudicates claimant's ER application.

## PROCEDURAL BACKGROUND

The parties dispute the delisting of claimant's recreational vehicle lock products from respondent's online platform.

### The Parties

Claimant is a North Carolina company and Amazon Selling Partner. Joint Stipulation of Facts at ¶¶1-2, dated 12/16/2025 (Stip.). Respondent is a Delaware corporation and online retailer.

### The Controlling Agreement

The parties entered an Amazon Services Business Solutions Agreement (BSA) to govern their relationship. Stip. at ¶3.

### Arbitration Demand

On November 25, 2025, claimant filed its Demand for Arbitration and sought ER. See ER App., dated 11/25/2025; Demand for Arb., dated 11/15/2025 (Demand).

### Emergency Request

Claimant seeks reinstatement as a respondent seller for two products, listed under the Amazon Standard Identification Numbers (ASIN) B0DM58ZB9N and B0D4TT6ZMB. Specifically, claimant requests an order compelling reinstatement of these two products to active status on Amazon.com and enjoining further deactivation for patent infringement pending decision on the merits of its alleged infringement in federal court. See ER App., dated 11/25/2025; Xie Dec., dated 11/14/2025; Ex. A-D.

### Emergency Arbitrator Appointment

Pursuant to Rule 39, the AAA immediately began the appointment process for an emergency arbitrator (EA). The AAA appointed the undersigned arbitrator to serve as the EA pursuant to Rule 39(c), after disclosures and an opportunity for objection. The EA held a Preliminary

Hearing and Initial Case Management Scheduling Conference (ER1) via telephone conference pursuant to Rule 39(d) of the Commercial Arbitration Rules on December 3, 2025. The following attendees participated in the telephonic conference: for claimant: Peter Brown; for respondent: Annamaria Taskai; and for the AAA: the Case Manager. See SO1 Rule 39 EA Order, dated 12/03/2025.

The EA conducted the scheduling hearing to achieve three purposes: (1) set an expedited schedule for adjudication of claimant's ER request; (2) determine the need, if any, for interim temporary relief pending briefing of the ER request; and (3) afford the parties an opportunity to be heard on an expedited basis. See id. To effectuate these goals, the parties and the EA agreed upon a December 17, 2025 hearing date, the submission of specifically requested documents, and a briefing schedule designed to proceed expeditiously given the complexity of the issues. See id.

**Interim Protections**

During the ER1, the EA instituted the following interim protections pending the December 17, 2025 hearing: (1) the issuance of a protective order to secure all confidential information in this case; (2) the secure transmission of all case submissions; (3) an arbitration hold on all documents relevant to this case; (4) a non-disparagement order prohibiting the parties from publicly characterizing each other in a negative light; and (5) an order requiring the parties to meet and confer and undertake all reasonable steps to avoid prejudice or harm to any party's interests. See id.

**Submissions**

In compliance with the above order, on December 5, 2025, claimant filed a copy of its Utah District Court proceedings, see Ex. C, and respondent filed a proposed protective order and a full copy of the BSA on behalf of both parties. See Ex. A. On December 8, 2025, claimant requested an overnight extension of time in which to file its amended demand particularizing its causes of action and full ER request. See Mtn. for Time Ext., dated 12/09/2025. The EA granted the request, whereupon claimant filed its amended demand on December 9, 2025. See Amended Demand, dated 12/09/2025. At the same time, claimant also submitted its brief, declarations, and exhibits in support of its ER request. See Yang Dec. and Ex. 1-5, dated 12/09/2025; Du Dec., dated 12/09/2025. On December 9, 2025, respondent submitted copies of the two IP complaints it received about claimant's products. See Taskai Email, dated 12/09/2025 with Att; Ex. K, M.

Respondent answered the demand and opposed the requested ER on December 10, 2025. See Answer, dated 12/10/2025; Opp., dated 12/10/2025. Respondent supported its opposition with a declaration and exhibits. See Bundy Dec., dated 12/09/2025, Ex. A-P. Respondent also objected to claimant's submission of the Yang and Du declarations without prior leave as untimely and prejudicial. See Johnson Emails, dated 12/10/2025. Respondent did not object to the extension of time. Id. Claimant responded to the objection on December 10, 2025. See Che Email, dated 12/10/2025.

The EA overruled the objection because the ER1 Order expressly granted the parties leave to submit, by no later than December 12, 2025, all other issues and information they wished the EA to review in preparation for the hearing to be held December 17, 2025. See SO1 Rule 39 EA

Order, dated 12/03/2025. The EA ruled that she would consider the declarations because claimant submitted the Yang and Du declarations before the December 12, 2025 deadline. The EA also granted respondent leave to file a sur-reply to the new submissions by December 15, 2025. See EA Email Rulings, dated 12/11/2025. Claimant filed its reply brief on December 12, 2025, and respondent filed its sur-reply on December 15, 2025. See Cl. Reply, dated 12/12/2025; Resp. Sur-Reply, dated 12/15/2025. After reviewing the submissions, the EA shared some questions with the parties to guide their oral arguments at hearing.

**Hearing**

The EA held a hearing on the ER request by videoconference on December 17, 2025. The AAA hosted the hearing through its partner Optima Juris. Michael Erickson, Peter Brown, and Shaoyi Che Tianqin Zhao represented claimant; Tara Johnson and Annamaria Taskai represented respondent. The parties fully argued the merits of their respective positions on the requested relief. During the hearing, both parties offered to supplement the record with additional information. The EA granted the requests and, given the upcoming holidays, permitted the parties until January 9, 2026 to supplement the record with:

- Copies of [redacted] complaints related to RVLock;
- The letter distinguishing [redacted] from claimant's products;
- The sales records of claimant's online products with respondent;
- Fiscal and other proof of harm in reliance on claimant's relisting;
- Appropriate proposed bond and indemnification provisions;
- Documents reflecting respondent's investigation in response to claimant's explanation of non-infringement;
- Any updated proceedings in the Utah action;
- Proof of injuries that cannot be adequately remedied through monetary damages;
- Proof of the number of sellers selling the delisted ASINs;
- Proof of claimant's ability to restrict sales of the delisted ASINs by third-parties not affiliated with or licensed by claimant; and
- Any other information, documents, declarations, or evidence helpful to the fair and just adjudication of the requested relief.

See SO2 Rule 39 EA Order, dated 12/28/2025.

**Post-Hearing Submissions**

On January 9, 2026, the parties filed supplemental materials for the EA's consideration. Claimant filed a supplemental declaration from Kohree CEO Du, documenting the specific harms claimant faces from the delisting and supporting exhibits. See Du Supp. Dec., dated 01/09/2026 & Ex. 1-4. Claimant also filed a copy of a January 6, 2026 letter to respondent (1) confirming its obligation to defend and indemnify it against any claims arising from the alleged infringement; (2) offering to post a bond of $100,000.00 in this proceeding as further protection; (3) representing its ability to ensure only Kohree sells challenged ASINs; and (4) promising to defend and indemnify respondent against any claims arising from third-party sales of the ASINs, in exchange for the relisting of its locks. See Kohree Tender Letter.

Respondent filed a supplemental brief, relevant sales data, and a supplemental declaration from

Manager Bundy, head of Amazon's legal department Notice and Takedown Team, documenting respondent's policies, its takedown decision, claimant's online sales record, and respondent's potential legal exposure if relisting in the absence of a court order or retraction. See Bundy Supp. Dec., dated 01/06/2026 & Ex. Q-R. Respondent also filed a declaration from Cade Harris, owner of claimant's competitor RVLock, documenting its infringement complaints and ongoing litigation. See Harris Dec., dated 12/18/2025 & Ex. A-B.

**KEY FACTS**

Claimant sells an extensive array of over 200 hundred products, including RV and marine accessories, on respondent's online marketplace under Seller Identification Number A67FFQ1POP4BF. Stip. at ¶2; see Amazon.com (search: Kohree) https://www.amazon.com/s?k=kohree&crid=2RQNAJV9NK9CI&sprefix=kohre%2Caps%2C247&ref=nb_sb_noss_1 (last accessed 01/06/2026). Respondent maintains several policies and procedures related to the sale of goods on its platform, including a Seller Code of Conduct, Anti-Counterfeiting Policy, Product Authenticity and Quality Policy, Intellectual Property Policies for Rights Owners and Sellers, Responsible Sourcing Documentation Request Policy, and the Amazon Patent Evaluation Express Procedure (APEX) (collectively, Amazon Policies). Stip. at ¶4; see Ex. B-H. APEX participation is voluntary and confidential and may be suspended or not initiated by respondent pending completion of ongoing patent litigation. Stip. at ¶5; Ex. H.

On July 21, 2015, the United States issued Patent No. 9,085,919 (the 919 Patent) for the "Touch Pad Lock Assembly" with application number 13/424,512, filed on March 20, 2012. Stip. at ¶6. RVLock & Co., LLC (RVLock), a claimant competitor, apparently owns the 919 Patent by assignment from Bauer Products, Inc., executed on September 12, 2023, and recorded with the USPTO on September 14, 2023, under Reel/frame 064909/0535. Id. at ¶7; Ex. I. Claimant offered RV door lock products for sale on respondent's platform under ASINs B0DM58ZB9N and B0D4TT6ZMB (the ASINs). Stip. at ¶8.

On April 28, 2025, respondent notified claimant that it had removed ASIN B0DM58ZB9N based on a patent infringement report filed by RVLock (Complaint ID 17648565881) (the April 28 Notice). Id. at ¶9; Demand at ¶5; Xie Dec. at ¶8; Du Dec. at ¶7; Ex. K, L. RVLock alleged that ASIN B0DM58ZB9N infringed one or more claims of the 919 Patent [redacted] Stip. at ¶10; Ex. K.

Respondent informed claimant that, to reactivate the delisted ASIN, claimant had to either secure a court order or RVLock's retraction. Stip. at ¶11. The April 28 Notice also invited claimant to submit an explanation if it believed that its listings had been removed in error. Ex. L. Claimant filed a declaratory judgment action in the United States District Court for the District of Utah on May 23, 2025, seeking a determination of non-infringement of the 919 Patent and preliminary relief against RVLock's continued submission of infringement notices. Demand at ¶6; Ex. C; Stip. at ¶12; see Kohree v. RVLock & Co., Case No.1:25-cv-00067-RJS-CMR.

On June 2, 2025, respondent notified claimant that it had removed ASIN B0D4TT6ZMB based on a patent infringement report filed by RVLock (Complaint ID 17835546341) (the June 2 Notice). Stip. at ¶13; Ex. M, N. RVLock had alleged that ASIN B0D4TT6ZMB infringed one or more claims of the 919 Patent [redacted] Stip. at ¶14; Ex. M. Respondent informed claimant that, to reactivate the delisted ASIN, claimant had to either secure a court order or RVLock's retraction. Stip. at ¶15;

Ex. N. The June 2 Notice also invited claimant to submit an explanation if it believed that its listings had been removed in error. Ex. N.

On June 5, 2025, claimant provided respondent with a Non-Infringement Opinion Letter, signed by a USPTO-registered patent attorney and co-signed by three other Federal Circuit-admitted attorneys, opining that claimant's products utilize a dual-gear mechanism different from the cam-and-linkage design in RVLock's patent. Demand at ¶6; Ex. B; Stip. at ¶16; Ex. O. In addition to counsel's opinion detailing how claimant's products do not infringe the 919 Patent, claimant notified respondent of the pending Utah Action and requested immediate relisting of the removed ASINs, including B0DM58ZB9N and B0D4TT6ZMB. Stip. at ¶16; Ex. O. Claimant formally appealed the delisting, attaching the above documentation, on June 7, 2025. Ex. O. On July 1, 2025, respondent denied claimant's appeal. Ex. P.

On July 3, 2025, claimant filed a Motion for Preliminary Injunction in the Utah Action seeking an order (1) prohibiting RVLock from asserting infringement of the 919 Patent against it; (2) barring RVLock from submitting further similar infringement reports to respondent; and (3) requiring RVLock to withdraw its current patent infringement complaints with respondent regarding the ASINs. Stip. at ¶17. On July 7, 2025, respondent reinstated claimant's ASINs and instructed RVLock not to submit materially identical infringement complaints. Demand at ¶7; Xie Dec. at ¶14; Du Dec. at ¶19; Stip. at ¶18. Respondent erroneously reinstated the ASINs because it mistook claimant's Motion for Preliminary Injunction in the Utah Action as a Court Order granting the requested injunction. Stip. at ¶18.

On July 22, 2025, RVLock answered the Utah complaint and filed a counterclaim for patent infringement. See Answer and Counterclaim, dated 07/22/2025. On July 23, 2025, claimant withdrew its motion for injunctive relief in the Utah Action as moot given respondent's reinstatement of its products. Stip. at ¶19. After the ASINs' relisting on July 7, 2025, claimant invested heavily in recouping its market share through increased advertising, increased product orders from its manufacturer, and additional product shipments to and storage in respondent's facilities. Du Dec. at ¶19.

On September 24, 2025, respondent delisted the ASINs again. Demand at ¶8; Xie Dec. at ¶16; Stip. at ¶20. Respondent notified claimant that it had removed the ASINs based on a patent infringement report filed by RVLock (Complaint ID 18541789421) (the September 24 Notice). Stip. at ¶20. On September 26, 2025, respondent reaffirmed its decision and confirmed that claimant had exhausted its internal appeals. Demand at ¶9. As of December 17, 2025, RVLock has not retracted its infringement complaints, and claimant has not obtained a non-infringement or invalidity order as to the 919 Patent. Stip. at ¶21. Claimant continues to sell many other non-delisted products on respondent's platform. See https://www.amazon.com/s?k=kohree&crid=3BB06JJB3IERJ&sprefix=kohree%2Caps%2C193&ref=nb_sb_noss_1, last accessed 01/06/2026.

## LEGAL ANALYSIS

### Applicable Law

The parties confirmed that the Federal Arbitration Act, Washington substantive law, and the AAA Commercial Rules apply in addition to the parties' agreement. See ER1 Order, dated 12/03/2025.

## Jurisdiction

The parties confirmed jurisdiction before the AAA and the EA. See id. Further, the EA finds that she has jurisdiction to adjudicate the parties' dispute pursuant to Section 18 of the BSA, which provides for binding arbitration of "any dispute" between the parties and a "claim" relating "in any way" to the BSA between the parties. See BSA at § 18. The parties can argue the merits of the ER sought during each step of a three-step process: (1) during the initial conference call and adjudication of the need for temporary interim relief pending a hearing on claimant's preliminary injunction (PI) request; (2) during the determination of the need for a PI pending the merits hearing; and (3) during the weighing of the evidence and the propriety of the issuance of a permanent injunction after an evidentiary hearing. The EA has jurisdiction over steps 1 and 2, whereas the Merits Arbitrator has jurisdiction over step 3. See SO1 Rule 39 EA Order, dated 12/03/2025.

In its submissions after the preliminary hearing of December 3, 2025, respondent now challenges the AAA's jurisdiction over claimant's "patent dispute with RVLock" and its jurisdiction to order it "to relist potentially infringing products." See Resp. Opp., Resp. Supp. Br. The EA overrules the objection and finds that respondent waived these challenges when it (1) conceded the AAA's jurisdiction during the preliminary hearing, (2) failed to raise the issue in response to the SO1 Order confirming the AAA's jurisdiction, see SO1 Rule 39 EA Order, dated 12/03/2025, and (3) failed to object to the AAA's jurisdiction in its answer. See AAA Comm. Arb. Rules, R-7(c). Nevertheless, the EA rules that the Utah District Court, and not the AAA, has jurisdiction over claimant's patent dispute with RVLock in the currently pending federal court action. The AAA and the EA confine their jurisdiction to the current dispute in arbitration between claimant and respondent.

## Rule 39

Rule 39 permits a party in need of ER before the parties have selected the Merits Arbitrator to apply for such relief upon notice. Rule 39 authorizes the EA to set an emergency schedule, provide an opportunity for all parties to be heard, rule on her own jurisdiction, rule on Rule 39's applicability, and rule on the Rule 39 substantive request. See Rule 39(d). If satisfied that the requesting party has shown immediate or irreparable harm in the absence of ER and legal entitlement to such relief, the EA may enter an Interim Award or order granting the relief. Rule 39(e).

In pertinent part, Rule 39 provides:

> (b) A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. …
> …
> (e) If, after consideration, the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief under applicable law, the emergency

arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

(f) Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the non-emergency ("merits") arbitrator is appointed; thereafter such a request shall be addressed to the merits arbitrator. The emergency arbitrator shall have no further power to act after the merits arbitrator is appointed unless the emergency arbitrator is named as the merits arbitrator or as a member of the panel.

…

(i) The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the merits arbitrator to determine finally the apportionment of such costs. The emergency arbitrator may take into consideration whether the request for emergency relief was made in good faith.

AAA Comm. Arb. Rules, R-39.

**APPLICABLE STANDARD**

The EA rules, and the parties agree, that Washington law governs this dispute. See ER1 Order, dated 12/03/2025. To obtain a preliminary injunction under Washington law, claimant must show that (1) it has a clear legal or equitable right; (2) it reasonably fears immediate invasion of that right, which (3) will cause it actual and substantial injury if not enjoined. Rabon v. City of Seattle, 135 Wn.2d 278, 284, 957 P.2d 621, 623 (1998); Tyler Pipe Indus., Inc. v. Dep't of Revenue, 96 Wn.2d 785, 792, 638 P.2d 1213, 1217 (1982); Port of Seattle v. International Longshoremen's & Warehousemen's Union, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958); York v. Wahkiakum Sch. Dist. No. 200, 110 Wn. App. 383, 385, 40 P.3d 1198, 1199, (2002); see, e.g., Nielson v. King County, 72 Wn.2d 720, 435 P.2d 664 (1967); LeMaine v. Seals, 47 Wn.2d 259, 287 P.2d 305 (1955); Grande Ronde Lumber Co. v. Buchanan, 41 Wn.2d 206, 248 P.2d 394 (1952); Isthmian S.S. Co. v. National Marine Eng'rs Beneficial Ass'n, 41 Wn.2d 106, 247 P.2d 549 (1952); King County v. Port of Seattle, 37 Wn.2d 338, 223 P.2d 834 (1950); State ex rel. Hays v. Wilson, 17 Wn.2d 670, 137 P.2d 105 (1943); Agronic Corp. of America v. deBough, 21 Wn. App. 459, 585 P.2d 821 (1978); Hendricks v. Lake, 12 Wn. App. 15, 528 P.2d 491 (1974); Tyler v. Van Aelst, 9 Wn. App. 441, 512 P.2d 760 (1973). Washington also balances the relative harm to and interests of the parties and the public in deciding whether to exercise the equitable powers of injunctive relief. Rabon, 135 Wn.2d at 284, 957 P.2d at 623; Tyler Pipe, 96 Wn.2d at 792, 638 P.2d at 1217; see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The EA analyzes each of the required factors.

Respondent argues that claimant must satisfy an even higher "doubly demanding" standard of proof because it seeks a "particularly disfavored" mandatory injunction, which requires claimant to demonstrate that the law and facts both "clearly favor" its request. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015). A mandatory injunction goes well beyond returning the parties to the prior status quo and instead requires the responsible party to undertake and continue to undertake affirmative action. See id. For example, in Garcia, the applicant sought a mandatory injunction and therefore had to satisfy the higher burden of proof because she requested an injunction requiring Google to remove and to keep removing a film from the platforms under its control

whenever and wherever, posted by whomever. Id.

Though tribunals disfavor injunctions that would “upend rather than maintain the status quo,” the EA concludes that claimant seeks an injunction returning the parties to the prior status quo. Capriole v. Uber Techs., Inc., 7 F.4th 854, 867 (9th Cir. 2021). Washington defines the “status quo” preserved by a preliminary injunction as the “last actual, peaceable, non-contested condition which preceded the pending controversy.” Gen. Tel. Co. of the Nw., Inc. v. Wash. Utils. & Transp. Comm’n, 104 Wn.2d 460, 478, 706 P.2d 625 (1985); State ex rel. Pay Less Drug Stores v. Sutton, 2 Wn.2d 523, 529, 98 P.2d 680 (1940).

Here, under the last peaceable, non-contested condition between the parties – the status quo – claimant could sell the challenged ASINs on respondent’s platform. In April 2025, before respondent received the patent infringement complaints prompting it to delist the contested ASINs, claimant sold them publicly on the platform. After delisting, claimant immediately contested the removal of its products and sought their reinstatement both through respondent’s internal processes and the legal system. In short, the ASINs’ delisting became the new contested condition between the parties. ER restoring the prior uncontested condition – the pre-takedown listing of the ASINs – would maintain rather than upend the status quo. Consequently, the EA rules that, though claimant must prove its entitlement to ER under Washington law, it need not prove the doubly demanding requirements needed to obtain mandatory injunctive relief.

## IRREPARABLE HARM

An injunction must be necessary to prevent serious irreparable loss, not inconveniences, speculative harm, or insubstantial injury. Tyler Pipe, 96 Wn.2d at 796, 638 P.2d at 1219. Even, when necessary, Washington will not grant injunctive relief if claimant has “a plain, complete, speedy and adequate remedy at law.” Tyler Pipe, 96 Wn.2d at 791, 638 P.2d at 1216; State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., 87 Wn.2d 298, 312, 553 P.2d 423 (1976), appeal dismissed, 430 U.S. 952 (1977).

Washington courts generally find legal remedies inadequate if claimant proves any one of the following: (1) money cannot compensate the injury given its nature, (2) monetary damages could not readily be ascertained with any degree of certainty, or (3) the injury’s continuing nature precludes a truly efficient legal remedy. Kucera v. DOT, 140 Wn.2d 200, 210-11, 995 P.2d 63, 69 (2000). The EA finds that, although claimant has adequate remedies at law for some of its claimed injuries, it nevertheless satisfies all three of Washington’s qualifying inadequate legal remedies.

### Adequate Legal Remedies

Monetary damages could easily remedy some of claimant’s losses, such as warehousing and transportation costs, if contractually permitted. See Xie Dec. at ¶23, Du Dec. at ¶12 (estimating damages); see also Amended Demand at ¶31(c) (same). However, the BSA precludes many categories of claimant’s requested monetary relief. For example, Section 7 disclaims liability for the interruption of services, and Section 8 limits liability for lost business revenues, consequential damages, and investment recoupment. See BSA at §§ 7(a), 8. Thus, though legal remedies would normally compensate for some of claimant’s alleged harms, the parties’ contract precludes those monetary remedies necessary to make claimant whole.

**Inadequate Legal Remedies**

As to other alleged harms, the EA finds that claimant qualifies for all three types of inadequate legal remedies sanctioned by Washington law and consequently satisfies the irreparable harm requirement. Claimant submitted declaratory evidence substantiating the irreparable, immediate, and ongoing harm to its online retail sales of its RV locks, all of which substantiate the need for emergency relief. See, e.g., Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.1991); Aria Diagnostics, Inc. v. Sequenom, Inc., 726 F.3d 1296, 1304 (Fed. Cir. 2013); Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1368 (Fed. Cir. 2001); Bio–Technology Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1566 (Fed. Cir. 1996); Beyond Blond Prods. v. Heldman, 479 F. Supp. 3d 874, 887 (C.D. Cal. 2020). With respondent's online marketplace accounting for a significant portion of all the ASINs' retail sales, see Medcursor Inc. v. Shenzhen KLM Internet Trading Co., 543 F. Supp. 3d 866, 879 (C.D. Cal. 2021), delisting has effectively shut down claimant's primary sales channel for those specific products. See Xie Dec. at ¶4; Du Dec. at ¶11.

Respondent submitted credible sales data showing that claimant still sells hundreds of profitable products on respondent's platform. See Ex. Q-R. Claimant also submitted credible evidence showing no other viable, retail marketplace for the specific, delisted RV locks. Claimant built its RV lock products around the Amazon sales channel, and even its efforts to sell them through brick-and-mortar stores, such as Walmart and Target, have been compromised by the delisting. See Du Supp. Dec. at ¶7.

Further, the precise amount of lost sales, price erosion, ranking diminution, irretrievably lost market share to competitors, wasted advertising dollars, lost customers, fewer customer reviews, and other resulting business losses would be difficult to ascertain with the degree of certainty typically needed to prove damages. See Xie Dec. at ¶¶8, 15-21; Medcursor, 543 F. Supp. 3d at 879; Beyond Blond, 479 F. Supp. 3d at 887 (loss of reputation, goodwill, and prospective customers qualify as irreparable harm); compare Tyler Pipe, 96 Wn.2d at 794, 638 P.2d at 1218 (plaintiff did not show irreparable damage to its business, the threat of bankruptcy, or the need to borrow money).

Amazon uses an algorithm to determine a product's visibility to customers. Maintaining visibility on a product search page requires tremendous investment in advertising, product quality, and customer satisfaction. Du Dec. at ¶13. It also rests on an important prerequisite, steady sales. Once a listing is removed, which means the sales will drop to zero for a prolonged period, it loses market position even if later reinstated. Consumers will likely purchase alternatives from competitors if they cannot find claimant's RV locks on the platform. See Du Dec. at ¶15. Such lost market share demonstrates irreparable harm. See, e.g., TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc., 920 F.3d 777, 793 (Fed. Cir. 2019); Broadcom Corp. v. Emulex Corp., 732 F.3d 1325, 1338 (Fed. Cir. 2013). The nature of claimant's intangible harms, such as the loss of good will, potential reputational damage, loss of product placement, lost business opportunities, page-placement advantages, and other intangible injuries to its online presence preclude monetary damages from fully remedying the damage caused by its products' deactivation. See, e.g., Medcursor, 543 F. Supp. 3d at 879.

Moreover, these injuries will continue unabated for as long as claimant's products remain absent from the online retail marketplace. Finally, listing its locks with other online retailers

affords claimant no genuine alternative given respondent's dominance of the domestic market. Given respondent's "two strikes" policy, claimant's delisting could easily result in termination of its ability to sell on the website. See Du Dec. at ¶17. In sum, the EA concludes that claimant has sustained its burden to prove its reasonable fear of immediate and irreparable harm warranting injunctive relief.

**LIKELIHOOD OF SUCCESS**

To decide whether claimant has a clear legal or equitable right, the EA must examine the likelihood that claimant will prevail on the merits. Kucera, 140 Wn.2d at 216, 995 P.2d at 72; Rabon, 135 Wn.2d at 285, 957 P.2d 621; Washington Fed'n of State Employees, Council 28 v. State, 99 Wn.2d 878, 887-88, 665 P.2d 1337 (1983); Tyler Pipe, 96 Wn.2d at 793, 638 P.2d at 1217. In this sense, in ruling on an ER request, the EA must assess the merits of purely legal issues for purposes of deciding whether to grant or deny the preliminary injunction but does not adjudicate the case's ultimate merits. Rabon, 135 Wn.2d at 286, 957 P.2d at 624. Claimant asserts three causes of action: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) tortious interference. The EA examines claimant's likelihood of success on each.

**Breach of Contract**

To succeed on a breach of contract claim, claimant must prove four elements: contractual duty, breach, causation, and damages. Hard 2 Find Accessories, Inc. v. Amazon.com, Inc., 58 F. Supp. 3d 1166, 1171 (W.D. Wn. 2014), aff'd, 691 Fed. Appx. 406 (9th Cir. 2017); BP W. Coast Prods. LLC v. SKR Inc., 989 F. Supp. 2d 1109, 1121 (W.D. Wash. 2013); Baldwin v. Silver, 165 Wn. App. 463, 473, 269 P.3d 284 (2011).

**Contract Existence**

The EA finds that claimant will likely prove the existence of a contract between the parties, an element respondent does not dispute. As an Amazon Selling Partner, claimant accepted respondent's standard BSA entitling it to sell products on respondent's platform subject to the BSA's terms and conditions:

> THIS AMAZON SERVICES BUSINESS SOLUTIONS AGREEMENT (THE **"AGREEMENT"**) CONTAINS THE TERMS AND CONDITIONS THAT GOVERN YOUR ACCESS TO AND USE OF THE SERVICES AND IS AN AGREEMENT BETWEEN YOU OR THE BUSINESS YOU REPRESENT AND AMAZON. BY REGISTERING FOR OR USING THE SERVICES, YOU (ON BEHALF OF YOURSELF OR THE BUSINESS YOU REPRESENT) AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT, INCLUDING THE SERVICE TERMS AND PROGRAM POLICIES THAT APPLY FOR EACH COUNTRY FOR WHICH YOU REGISTER OR ELECT TO USE A SERVICE

BSA at § General Terms (original capitalization and bold).

**Duty**

Conversely, the EA finds claimant unlikely to prove the existence of a contractual duty requiring respondent to list claimant's products for sale on its platform. The BSA expressly permits either party to terminate or suspend the agreement or any service upon notice for any reason at any time. BSA at § 3. Additionally, the BSA reserves to respondent the sole right to determine the use of its online platform:

> Amazon has the right to determine, the design, content, functionality, availability and appropriateness of its websites, selection, and any product or listing in the Amazon Stores, and all aspects of each Service, including your use of the same. Amazon may assign any of these rights or delegate any of its responsibilities.

BSA at § S-6. Based upon these provisions, the EA determines that, except as prohibited by law, respondent contractually exercises complete discretion to determine which products it allows to be sold on its platform. Simply put, respondent has no legal or contractual duty to permit claimant to sell any product on its website.

**Breach**

Likewise, the EA finds claimant unlikely to prove respondent's breach of the BSA. Claimant's original demand and statement of claim neither specified its causes of action nor which BSA provision(s) respondent allegedly breached. See SOC, dated 11/25/2025. Accordingly, the EA requested claimant amend its demand to identify its causes of action with particularity. See SO1 Rule 39 EA Order, dated 12/03/2025.

In its amended demand, claimant based its breach of contract claim on S-1.2 of the BSA, asserting that Amazon materially breached Section S-1.2 by disabling its listings without a contractual basis, preventing merchandising and promotional placement of its products, removing its products from visibility, and depriving it of the benefit of its bargain. See Amended Demand, dated 12/09/2025 at ¶17. According to claimant, respondent promised in S-1.2 of the BSA to enable it to list its products, a promise respondent then breached when it delisted the challenged ASINs. Id. at ¶¶15-17.

S-1.2 of the BSA provides:

> **S-1.2 Product Listing; Merchandising; Order Processing.** We will enable you to list Your Products on a particular Amazon Site, and conduct merchandising and promote Your Products in accordance with the Agreement

BSA at § S-1.2 (original bold). The EA rules that, through this provision, respondent agreed to permit claimant to list its products "in accordance with the" BSA's terms. Id. In other words, respondent did promise to permit claimant to list its products as claimant contends – but only upon such terms and conditions specified in the BSA. In other words, respondent did not breach S-1.2, as long as it delisted claimant's products "in accordance with" those terms. Consequently, claimant can only succeed on its breach of contract claim if respondent delisted its products in violation of the parties' contract.

The EA holds that the BSA's terms permitted respondent to delist claimant's products. As set

forth above, S-6 of the BSA permits respondent to delist any product for any lawful reason at any time. Id. at § S-6. S-1.1 also requires sellers to comply with all laws when selling their products on respondent's marketplace and permits respondent to restrict product access to ensure its legality. Id. at § S-1.1. Section 18 of the BSA allows respondent to

> immediately halt any of Your Transactions, prevent or restrict access to the Services or take any other action to restrict access to or availability of any inaccurate listing, any inappropriately categorized items, any unlawful items, or any items otherwise prohibited by applicable Program Policies.

Id. at § 18.

Amazon's policies, in turn, permit it to delist products based upon (1) the submission of inaccurate information, (2) violative of the Seller Code of Conduct, (3) suspected of infringing another's intellectual property rights, (4) inconsistent with Amazon's Intellectual Property Program or Amazon's Intellectual Property Policy for Sellers, or which (5) fail to document their authenticity, just to name a few contract and policy specific reasons. See, e.g., Bundy Dec. at ¶¶8-10, 12, Ex. B.-D, Ex. F.
Based upon these provisions, claimant will unlikely succeed in establishing breach of S-1.2 of the BSA because respondent delisted its products "in accordance with the" BSA's other terms. See Hard 2 Find Accessories, 58 F. Supp. 3d at 1171-72 (breach of contract claim ignored contract language "except as otherwhere stated in" the BSA).

Further, claimant identified no other provision of the BSA allegedly breached by respondent. See Amended Demand at ¶¶15-17. Without identifying a contractual duty and its breach, claimant cannot prevail on its breach of contract cause of action. See Hard 2 Find Accessories, 58 F. Supp. 3d at 1171; Curl v. CitiMortgage, Inc., 2014 U.S. Dist. LEXIS 148055 (N.D. Cal. Oct. 17, 2014); Commerce & Indus. Ins. Co. v. HR Staffing, Inc., 2014 U.S. Dist. LEXIS 141637 (D. Or. Oct. 1, 2014); BP West Coast Prods., LLC v. Shalabi, 2012 U.S. Dist. LEXIS 17027 (W.D. Wash. Feb. 10, 2012). Accordingly, the EA concludes as a matter of law that claimant has failed to sustain its burden to prove its likelihood of success on the merits of its breach of contract claim.

**Breach of the Covenant**

Washington recognizes an implied duty of good faith and fair dealing in every contract that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." See Hard 2 Find Accessories, 58 F. Supp. 3d at 1173; Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 112-113, 323 P.3d 1036, 1041 (2014); Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). Claimant alleges that respondent breached the covenant of good faith and fair dealing by "arbitrarily and inconsistently" removing its ASINs twice without justification, ignoring the federal litigation that already seized jurisdiction over the patent issue, and disregarding "undisputed evidence showing the lawfulness" of its products. See Amended Demand at ¶¶22-23.

Claimant believes that it will succeed on its good faith and fair dealing claim based on its non-infringement analysis submitted to respondent before the second delisting, which shows that its competitor brought infringement claims against it without a genuine legal basis but rather merely to gain a competitive advantage. See Ex. B. The EA finds that claimant may very well succeed

on its underlying lawsuit against its competitor and vindicate itself against the infringement claims. See Ex. B; Yang Dec. at ¶¶4-8; Ex. 1-5; compare Ex. K. Initial examination of the competitor's patent and claimant's locks reveal no obvious infringement. Of course, the Utah District Court will ultimately adjudicate the patent infringement issue. However, the EA must assess claimant's likelihood of success against respondent in this arbitration, not its likelihood of success against its competitor in the federal action.

The EA finds claimant's likelihood of success on its bad faith claim against respondent here much more equivocal. Claimant correctly notes that courts construing similar marketplace agreements recognize that such provisions give rise to an implied duty not to arbitrarily or capriciously eliminate a seller's access to the marketplace—especially where the seller has invested substantial time, money, and reliance interests into building its business on that platform. See Badgett v. Security State Bank, 116 Wn.2d 563, 570 (1991). Indeed, courts recognize that a party with complete contractual discretion – such as respondent here – must exercise that discretion reasonably and in good faith. Claimant's United States business model relies almost exclusively on Amazon's platform – a reality Amazon arguably must consider in good faith when exercising its discretion to delist the seller.

Here, respondent delisted the challenged ASINs based upon a competitor's patent complaint without prior input or participation from claimant. Although the EA concludes that, except as otherwise prohibited by law, respondent enjoys absolute discretion to control the products on its platform, it must still exercise that discretion fairly and in good faith to satisfy the implied covenant of good faith and fair dealing. See, e.g., Myers v. Dep't of Soc. & Health Servs., 152 Wn. App. 823, 828, 218 P.3d 241 (2009). Hence, a tribunal could conclude respondent skirted the covenant, if claimant can substantiate its allegations, by delisting claimant's products in response to a competitor's unproven patent complaint without affording claimant an opportunity to defend itself before delisting.

At the same time, as the Hard 2 Find Court explained, the implied covenant of good faith and fair dealing cannot add or contradict express contract terms. 58 F. Supp. 3d at 1173. Nor does it "impose a free-floating obligation of good faith on the parties." Id. Instead, the implied duty derives from the contract's express duties. "If there is no contractual duty, there is nothing that must be performed in good faith." Id. at 1173-74; Rekhter, 180 Wn.2d at 112-113; Johnson v. Yousoofian, 84 Wn. App. 755, 762, 930 P.2d 921 (1996). Relying on this concept, Washington courts have upheld termination for convenience clauses in the face of a covenant of good faith and fair dealing challenge. See, e.g., SAK & Assocs. v. Ferguson Constr., Inc., 189 Wn. App. 405, 414-15, 357 P.3d 671 (2015).

For example, in Myers, the court held that the Department of Social and Health Services (DSHS) properly terminated a contract with a caregiver based on a termination for convenience provision and ruled that the covenant of good faith and fair dealing does not trump express contract terms. 152 Wn. App. at 828. The contract allowed the DSHS to terminate for neglect or convenience, if later determined not to be neglect. Id. DSHS terminated the caregiver's contract after an investigation found neglect. The neglect finding was ultimately reversed, and the caregiver sued DSHS for breach of contract, but the trial court dismissed the claim, and the appellate court upheld the dismissal, holding that the contract granted the DSHS broad authority to terminate the contract, regardless of the outcome of the administrative process. Id. at 827-28. The court expressed sympathy for the caregiver but ultimately upheld the contract's express terms:

> Ms. Myers makes a persuasive case that she, essentially, did nothing wrong here. Indeed, the administrative hearing process vindicated her. She, however, ignores the termination for convenience provision of her contract and offers no statute or administrative rule with which it might conflict. She raises questions of fact. But they are not material questions of fact. DSHS had authority under this contract to terminate the contract on a finding of neglect by Adult Protective Services and, failing that, it could do so for convenience. The trial court properly dismissed her suit on summary judgment.

Id. at 829-30.

The EA finds Myers persuasive here. Although claimant may very well have done "nothing wrong," the BSA authorizes respondent to terminate a listing within its broad discretion. Hence, a tribunal could just as easily conclude, as the Myers court did, that the implied covenant of good faith and fair dealing cannot trump an express contract term, such as S-6 of the BSA. Further, under Washington law, the EA will not issue an injunction in a "doubtful case." Rabon, 135 Wn.2d at 285; Washington Fed'n, 99 Wn.2d at 888; Tyler Pipe, 96 Wn.2d at 793; Isthmian, 41 Wn.2d at 117, 247 P.2d 549. Since a merits arbitrator could equally apply or distinguish Myers, the EA rules that claimant did not sustain its burden to prove its likelihood of success on the merits of its good faith and fair dealing claim.

**Tortious Interference**

The EA concludes that claimant demonstrated no likelihood of success on the merits of its tortious interference claim. To state a claim for tortious interference under Washington law, claimant must prove (1) the existence of a valid contractual relationship or business expectancy; (2) respondent's knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) respondent's interference for an improper purpose or by improper means; and (5) resulting damage. See Koch v. Mut. of Enumclaw, 108 Wn. App. 500, 506 (2001). Claimant failed to properly allege a tortious interference claim – let alone show likely success on it – because it has not alleged a contract with a third party with which respondent allegedly interfered. See Amended Demand at ¶¶26-30. Nor has claimant alleged the requisite "improper purpose," "improper means," or "bad faith" on respondent's part. See id. In short, claimant's third cause of action fails as a matter of pleading.

**INTEREST BALANCING**

Washington weighs the competing harms and interests in granting or denying the requested relief.

**Balance of Harms**

Here, the EA concludes that the harm to claimant from delisting outweighs the harm to respondent from relisting but that the parties both display important business interests. For the reasons analyzed above, claimant has proffered a showing of irreparable harm. The continued delisting of claimant's products threatens the products' viability. See Du Dec. at ¶21; Yang Dec. at ¶11. Prohibiting sales during the pendency of the Utah litigation deprives claimant of its only viable path to market and threatens its ability to survive long enough to obtain judicial determination. Thus, even if it prevails in the federal action on the merits, its victory may be

pyrrhic with no thriving product left to sell and no market share in which to sell it.

Conversely, the direct harm to respondent of relisting the products pending the federal outcome appears modest. Indeed, respondent has already committed to relisting the products if claimant prevails in its federal court action and therefore any harm caused to respondent from relisting its products must be negligible. Of course, if claimant prevails in the federal action, respondent no longer risks selling infringing products. Until claimant prevails, however, respondent faces possible exposure for knowingly selling infringing products after receiving notice of the alleged infringement. The degree of harm to respondent thus hinges to a certain degree upon claimant's likelihood of success in the federal action.

As noted above, the EA's initial review of the record suggests that claimant may indeed prevail in the federal action. Yet, the EA has jurisdiction over the present ER request, not the underlying merits of this demand – over which the merits arbitrator will have jurisdiction – nor the underlying merits of the federal court action – over which the Utah District Court has jurisdiction. Hence, until the District Court rules, the EA cannot unequivocally rule that respondent faces no risk of harm if it relists the products. The EA instead must weigh the parties' competing harms and in doing so, finds that claimant faces an immediate, actual, and concrete harm whereas respondent faces only the modest possibility of future harm, particularly when claimant has a contractual duty to defend and indemnify respondent. See Tender Letter.

**Balance of Interests**

More generally, however, the EA concludes that both parties exhibit strong business interests. On the one hand, claimant obviously has significant economic interests in maintaining its market share, preserving its online presence, thwarting anti-competitive gamesmanship, continuing a steady revenue stream, stopping abuse of respondent's patent infringement protocol to harm competitors, avoiding product storage and transportation fees, maximizing the value of its expended advertising dollars, retaining customers, preserving its business' goodwill and reputation, and ultimately surviving as an online seller of RV locks. See Yang Dec.; Xie Dec.; Du Dec.

On the other hand, respondent has significant countervailing interests in preserving the integrity of its retail marketplace, avoiding legal exposure from listing potentially illegal products, protecting its customers from allegedly violative products, preventing consumer product confusion, protecting all its vendors' rights, minimizing its embroilment in refereeing competing seller claims, and preserving its contractual right to unilaterally determine which products it sells on its own website. On balance, the EA concludes that the degree of harm weighs in favor of granting ER but the parties' competing interests weigh more strongly in favor of denying ER relief as respondent presents compelling business interests warranting protection.

**PUBLIC INTEREST**

Likewise, the EA concludes that the public interest, though supporting both parties' interests, weighs more strongly in respondent's favor. The public interest in increased competition, a wider range of products, access to previously highly rated locks, and the lower prices of increased product supply support claimant's request, while the public interest in product integrity, fair competition, and the increased innovation motivated by patent protections support respondent's opposition. In conclusion, the EA finds the public interest in preserving

marketplace integrity must govern.

**CONCLUSION**

Though a close call given the continuing harms faced by claimant, ultimately, the EA must deny claimant's request for emergency relief under Washington law because claimant's likelihood of prevailing on the merits of its breach of contract, good faith and fair dealing, and tortious interference claims raises doubts given respondent's contractual right to control its marketplace. The EA denies claimant's Rule 39 request without prejudice to its renewal before the Merits Arbitrator.

**IT IS SO ORDERED.**

**DURATION & SCOPE**

This Order shall continue in effect unless and until amended by subsequent order of the Emergency Arbitrator or Merits Arbitrator. Additionally, the following orders shall remain in effect unless and until amended by subsequent order of the Emergency Arbitrator or Merits Arbitrator: (1) the protective order securing all confidential information in this case; and (2) the arbitration hold on all documents relevant or potentially relevant to this case. This order will have no effect on the Merits Arbitrator's authority to render such relief, if any, he or she deems appropriate, including the vacatur or modification of this order.

January 12, 2026
*/s/ Janice L. Sperow*
Janice L. Sperow, Emergency Arbitrator