IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KOHREE LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RVLOCK & CO., LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> 1:25-cv-00067-RJS-CMR <br><br> District Judge Robert J. Shelby <br><br> Chief Magistrate Judge Cecilia M. Romero |
| RVLOCK & CO., LLC, <br><br> Counterclaimant, <br><br> v. <br><br> KOHREE LLC, et al, <br><br> Counterclaim Defendants. | |

Before the court is Plaintiffs Kohree LLC; Shenzhen Time Fortress Technology Co., Ltd.; Ningboyikemosigongyinglianyouxiangongsi; Dongguanshixinggankejiyouxiangongsi; and Dongguan Zhantai Metal Products Co., Ltd.'s Motion for Preliminary Injunction.[1] Plaintiffs seek emergency injunctive relief ordering Defendant RVLock & Co., LLC to retract its patent infringement complaints to Amazon.com, Inc. (Amazon) regarding Plaintiffs' products, which resulted in their removal from the online marketplace.[2] For the reasons discussed below, the court DENIES the Motion.

---

[1] Dkt. 55, *Plaintiff's Motion for Preliminary Injunction* (*Motion*).

[2] *Id.* at 6.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Plaintiffs are one American and four Chinese companies that market and sell recreational vehicle (RV) door lock products exclusively on Amazon.[4]  RVLock is a Utah limited liability company that manufactures and sells RV door locks.[5]  In 2023, RVLock purchased U.S. Patent No. 9,085,919 (the Patent) from lock manufacturer Bauer Products Inc.[6]  The Patent describes a locking devices that uses an internal cam-and-linkage mechanism to actuate a deadbolt to secure a door.[7]  The Patent claims a lock assembly "adapted for mounting adjacent an associated closure" containing the following pertinent elements (also known as "limitations" or "claims"):

> [1.a] a housing;
>
> [1.b] an external handle pivotally mounted in an exterior portion of the housing for rotation between a retracted position and an extended position;
>
> [1.c] a latch operably connected with the external handle and configured such that when the external handle is in the retracted position, the latch is in a latched position, wherein the closure cannot be unintentionally shifted from the closed position, and when the external handle is in the extended position, the latch is in an unlatched position, wherein the closure is free to be shifted from the closed position to the open position;
>
> [1.d] a key lock mounted on the exterior portion of the housing, where the key lock has a locked and an unlocked position;
>
> [1.e] a lock cam rotatably mounted in the housing and operably connected with the key lock for rotation therewith, the lock cam having a lock cam crank arm;
>
> [1.f] a first link operably connected with the lock cam crank arm;

---

[3] The following facts are drawn from the Second Amended Complaint and evidence attached as exhibits to the Motion, Response and Reply briefs.  *See* Dkt. 29, *Second Amended Complaint* (*SAC*), Dkt. 62, *Defendant RVLock's Opposition to Plaintiffs' Motion for Preliminary Injunction* (*Opposition*), and Dkt. 68, *Reply in Support of Plaintiffs' Motion for Preliminary Injunction* (*Reply*).  The facts discussed in this section are not disputed by the parties in their Response and Reply briefs.

[4] Dkt. 29, *SAC* ¶¶ 2–7.

[5] *Id.* ¶ 8.

[6] *Id.* ¶¶ 14–16.

[7] *Id.* ¶ 38.

[1.g] a deadbolt lock movably mounted in the housing for shifting between a locked position, wherein the closure is positively retained in the closed position, and an unlocked position, wherein the closure is free to be shifted between the open and closed positions;

[1.h] the deadbolt lock being operably connected with the first link;

[1.i] a motor having a locked and unlocked position operatively connected with the first link; and

[1.j] an electronic touchpad mounted on the exterior portion of the housing being operatively connected with the motor, whereby entry of a preselected numerical code actuates the motor and contemporaneously shifts the deadbolt lock between the locked and unlocked positions.[8]

The invention's example diagram depicts the actuation of the deadbolt in the following manner: when the key is turned, it rotates an attached lock cam, which is connected to a crank arm by a "second link."[9]  This moves the crank arm towards or away from the edge of the door.[10]  The movement of the crank arm pulls or pushes on the "first link" that connects the crank arm to the deadbolt, which in turn causes the deadbolt to retract or extend accordingly.[11]



*Figure 1 '919 Patent Example Diagram, including the Lock Cam (74), Crank Arm (75), Motor Crank Arm (76), Deadbolt (80), First Link (83), and Second Link (87).*

---

[8] Dkt 55-1, *U.S. Patent No. 9,085,919* (*'919 Patent*) at 21.

[9] *Id.* at 13–14, 21.

[10] *Id.*

[11] *Id.*

After acquiring the Patents, RVLock began submitting infringement complaints to Amazon against other sellers. Under the Amazon Patent Evaluation Express (APEX) program, patent owners may report products they suspect of infringement and request a neutral evaluator review the allegation of infringement.[12] If the evaluator determines that an accused product is covered by a patent, the products are removed from the Amazon store.[13] Amazon then issues the patent owner an "APEX ID" number which can then be used in future infringement complaints against other sellers.[14]

In December 2023, RVLock successfully reported a third party's product for infringing on the Patent.[15] Amazon issued RVLock an APEX ID for the Patent and informed RVLock that "[r]ather than initiating another patent evaluation, please submit future claims against ASINs you believe to infringe [upon the Patent] via the Brand Registry Report a Violation portal. . . . . We will review your patent notices concerning [the Patent] without the need for you to opt in to patent evaluation again."[16] RVLock subsequently used the APEX ID to successfully report another infringing product in November 2024.[17]

Plaintiffs manufacture and sell locks (the Accused Products) on Amazon.[18] Like the Patent design, the Accused Products also use a deadbolt locking mechanism.[19] However, unlike

---

[12] *SAC* ¶ 17; *see also* Dkt. 55-9, *Amazon Patent Evaluation Express (Apex) Program* (*APEX Webpage*) at 1.

[13] *SAC* ¶ 17.

[14] *APEX Webpage* at 1.

[15] *See* Dkt. 62-7, *Conclusion of Amazon Patent Evaluation Express Case 12/21/2023 Email* (explaining neutral evaluator found a third-party's product "likely infringe[s]" the Patent).

[16] *Id.*

[17] Dkt. 62-8, *Conclusion of Amazon Patent Evaluation Express Case Nov. 22, 2024 Email* (explaining neutral evaluator found another third-party's product "likely infringe[s]" the Patent).

[18] *SAC* ¶¶ 27, 29, 31, 33, 35.

[19] *Id.* ¶ 38.

the Patent, the Accused Products rely on a dual-gear drive configuration to move the deadbolt.[20] In this system, the key lock is directly connected to a turning gear, which intermeshes with a second turning gear.[21]  The second gear has a small crank arm extending upwards to contact an extension of the deadbolt.[22]  When the key is turned, the gears rotate, sliding the crank arm along a groove in the deadbolt and causing the deadbolt to move linearly in or out of the housing.[23]

Between April and June 2025, RVLock submitted infringement complaints to Amazon claiming the Accused Products violate the Patent.[24]  Amazon subsequently removed the Accused products from its online marketplace.[25]  Amazon did not allow Plaintiffs to opt in to an Apex evaluation process or submit defenses of their products to a neutral arbitrator.[26]

Plaintiffs commenced this action against RVLock on May 23, 2025, seeking declaratory relief stating the Accused Products do not infringe upon the Patent.[27]  RVLock filed a timely Answer and Counterclaim against Plaintiffs for Patent Infringement.[28]

On July 3, 2025, Plaintiffs filed a Motion for Preliminary Injunction requesting the court order RVLock to retract its complaints to Amazon regarding the Accused Products.[29]  Several days later, Amazon informed RVLock it was reinstating the sale of the Accused Products.[30] Amazon stated it was notified of the "declaratory judgment lawsuit against the patent owner,"

---

[20] *Id.* ¶¶ 38–39; Dkt. 62-6, *RVLock Initial Infringement Contentions* at 35–39.

[21] *Id.* ¶¶ 38–39; *RVLock Initial Infringement Contentions* at 35–39.

[22] *Id.* ¶¶ 38–39; *RVLock Initial Infringement Contentions* at 35–39.

[23] *Id.* ¶¶ 38–39; *RVLock Initial Infringement Contentions* at 35–39.

[24] *SAC* ¶¶ 28, 30, 32, 34, 36.

[25] *Id.* ¶ 18.

[26] *Id.*

[27] Dkt. 1, *Complaint.*

[28] Dkt. 16, *Answer to Complaint and Counterclaims for Patent Infringement.*

[29] Dkt. 12, *Motion for Preliminary Injunction.*

[30] Dkt. 15-13, *APEX ID"1475231281l Email.*

and instructed RVLock not to submit any notices against the products unless they receive a judgment in their favor.[31]  With their products reinstated, Plaintiffs withdrew their Motion for Preliminary Injunction on July 23, 2025.[32]

On August 12, 2025, Plaintiffs filed an Amended Complaint adding Plaintiff Dongguan Zhantai Metal Products Co., and including new causes of action for declaratory judgment of invalidity and unenforceability, and for tortious interference with business relationships.[33] Plaintiffs amended the Complaint a second time on September 25, 2025.[34]

At about the same time, Amazon again delisted the Accused Products.[35]  Amazon informed Plaintiffs in order to reinstate their selling privileges, they "must either (1) obtain a court order, or (2) have the patent owner retract the infringement report."[36]  Amazon later stated it erroneously reinstated the Accused Products because it mistook the Plaintiffs' Motion for Preliminary Injunction as a court order.[37] Plaintiffs then sought emergency relief through an arbitration proceeding against Amazon to restore their selling rights.[38]  After a hearing, the arbitrator denied Plaintiffs' request for emergency relief.[39]

---

[31] *Id.*

[32] Dkt. 19, *Notice of Withdrawal of Motion for Preliminary Injunction* at 1–2.

[33] Dkt. 22, *Amended Complaint*.

[34] *SAC*.

[35] *See* Dkt. 55-10, *Declaration of Zhanyan Du in Support of Plaintiffs' Motion for Preliminary Injunction* (*Du Declaration*) ¶ 18; Dkt 55-11, *Declaration of Jiayi Xie in Support of Plaintiffs' Motion for Preliminary Injunction* ¶ 15.

[36] *Du Declaration* ¶ 19.

[37] Dkt. 55-2, *Rule 39 Emergency Relief Order* at 6.

[38] *Du Declaration* ¶ 21.

[39] *Rule 39 Emergency Relief Order* at 17.

On March 12, 2026, Plaintiffs filed the pending Motion for Preliminary Injunction.[40] Plaintiffs seek injunctive relief ordering RVLock to retract its patent infringement complaints to Amazon against the Accused Products.[41]  The Motion is fully briefed and ripe for review.[42]

## JURISDICTION

The court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the action arises under the Patent Act of the United States, 35 U.S.C. § 1 et seq. The court has personal jurisdiction over RVLock because the company is registered and headquartered in Utah, and it routinely conducts business in the state.[43]

## LEGAL STANDARD[44]

Emergency injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[45]  To prevail on a motion for a preliminary injunction, a movant must show "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[46]  The Tenth Circuit

---

[40] *Motion.*

[41] *Id.*

[42] *See Opposition*; *Reply*.

[43] *See SAC* ¶¶ 8, 10.

[44] Though Federal Circuit law typically governs patent infringement claims, the "Federal Circuit has generally viewed the grant of a preliminary injunction as a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998); *see also Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1188 n. 2 (Fed. Cir. 1996) ("On procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit, the law of the regional circuit shall be applied."). Because a preliminary injunction enjoining RVLock from communicating its patent infringement claims with Amazon concerns its First Amendment Rights, the Motion here is not unique to areas exclusively assigned to the Federal Circuit.  Accordingly, Tenth Circuit law governs the Motion, while "giv[ing] dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues."  *Mikohn Gaming*, 165 F.3d at 894.

[45] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

[46] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citation omitted).

recognizes three types of disfavored injunctions which require the movant satisfy a "heightened standard by making a stronger showing on the elements of a preliminary injunction."[47]  The three types of disfavored injunctions are (1) those "that alter the status quo;" (2) those that are "mandatory" as opposed to prohibitory; and (3) those "that afford the movant the relief that it could recover at the conclusion of a full trial on the merits."[48]  An injunction is "mandatory if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result . . . places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.[49]  Any injunction "fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[50]  Here, Plaintiffs seek an injunction ordering RVLock to retract its patent infringement complaint, which is a mandatory order and thus a disfavored injunction.[51]  To prevail, Plaintiffs "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[52]

---

[47] *Colo. Motor Carriers Ass'n v. Town of Vail*, 153 F.4th 1052, 1066 (10th Cir. 2025) (citation modified).

[48] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005).

[49] *Id.* at 1261 (citation modified).

[50] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

[51] *See Motion*.

[52] *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (citation modified).

If the requested injunction implicates a party's First Amendment rights, an even higher standard applies.[53]  In *GP Industries, Inc. v. Eran Industries, Inc*.,[54] the Federal Circuit held a preliminary injunction preventing a defendant from communicating its patents rights with another party may be granted only upon "a showing of bad faith," and establishing the patent infringement claims "were objectively baseless."[55]  A claim is objectively baseless if "no reasonable litigant could realistically expect success on the merits."[56]

RVLock contends this heightened standard applies because the requested injunction would violate its right to inform others of its patent rights.[57]  Plaintiffs argue it does not apply because *GP Industries* involved enjoining future communications between the defendant and third-party customers and does not specifically address the retraction of an Amazon patent infringement complaint.[58]

The court concludes the *GP Industries* standard applies here.  Plaintiffs seek an injunction ordering RVLock to retract its communications to Amazon regarding its patent rights.[59]  This necessarily implicates RVLock's First Amendment rights as a patent holder to express its view that certain products infringe upon its patent.  The court ascertains no

---

[53] *See Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023) (citing *GP Indus.*, 500 F.3d at 1373–74) (while considering a preliminary injunction to bar a patent holder from communicating his opinion that a competitor's product infringes upon his rights, the court held "First Amendment principles are particularly significant when an injunction against speech is at issue"); *GP Indus., Inc. v. Eran Indus., Inc.*, 5009 F.3d 1369, 1373–74 (Fed. Cir. 2007) ("[W]e wish to note the rarity of an injunction being granted against communicating with others concerning one's patent rights.  This is not a grant or denial of an injunction against infringement, but an injunction against communication, a much more serious matter.  One has a right to inform others of his or her patent rights. See 35 U.S.C. § 287.  Thus, an injunction against communication is strong medicine that must be used with care and only in exceptional circumstances.").

[54] 500 F.3d 1369 (Fed. Cir. 2007).

[55] *Id.* at 1373–74.

[56] *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004) (quoting *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus. Inc.,* 508 U.S. 49, 60 (1993)).

[57] *Opposition* at 28; *see also GP Indus.*, 500 F.3d at 1373.

[58] *Reply* at 12–13.

[59] *See Motion*.

meaningful difference between formal infringement complaints submitted to Amazon and other methods of communicating accusations of patent infringement. RVLock proceeding through Amazon's specifically created procedure for communicating patent infringement claims does not void the complaints of First Amendment protections. Nor does it matter that the injunction concerns rescinding past communications as opposed to barring future ones.

Plaintiffs rely on four district court cases in which courts have ordered retractions of Amazon complaints without applying the *GP Industries* standard.[60] But these cases are inapplicable. Three of the cases involved defendants who defaulted or failed to appear to defend their complaints, so there was no opposing party available to raise the argument.[61] In the fourth case, *Medcursor Inc. v. Shenzen KLM Internet Trading Co., Ltd.*,[62] the Central District of California held the patent was likely invalid for multiple clear instances of prior usage.[63] The First Amendment concerns were thus irrelevant because the higher standard would not have changed the outcome.[64] The court concludes the *GP Industries* standard applies here.

Thus, to obtain the requested injunction, Plaintiffs must make a strong showing that they are likely to succeed in establishing RVLock submitted objectively baseless claims and acted in bad faith.

---

[60] *Reply* at 12 (citing *Mabe, LLC v. Wie*, No. 2:25-cv-00319-DPP, 2025 WL 1433910, at *4 (D. Utah May 19, 2025); *Changsha Suda Elec. Com. LLC v. Guangzhou Yimei Cosms. Co. Ltd.*, No. 2:25-cv-01978-LK, 2025 WL 3022254, at *8 (W.D. Wash. Oct. 29, 2025); *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-cv-06943, 2022 WL 17811475, at *3 (E.D.N.Y. Dec. 18, 2022); *Medcursor Inc. v. Shenzen KLM Internet Trading Co., Ltd.*, 543 F. Supp. 3d 866, 877–79 (C.D. Cal. 2021)).

[61] *See Mabe*, 2025 WL 1433910, at *2; *Changsha Suda Electronic Commerce*, 2025 WL 3022254, at *2; *Sound Around*, 2022 WL 17811475, at *2.

[62] 543 F. Supp. 3d 866 (C.D. Cal. 2021).

[63] *Id.* at 871–76.

[64] *See id.*

10

**ANALYSIS**

The court now turns to analysis of the factors governing the preliminary injunction. Plaintiffs contend they are likely to succeed on the merits because the Accused Products lack the cam-and-linkage elements of the Patent,[65] and RVLock's infringement complaints are therefore objectively baseless and made in bad faith.[66]  The court disagrees.  RVLock reasonably asserts that the Accused Products violate their Patents.[67]  Plaintiffs provide no evidence that RVLock submitted its complaints to Amazon in bad faith.  And even if the court were to apply a lower standard, Plaintiffs have not shown a strong likelihood of success at prevailing on the underlying patent infringement claim.

**I.      Likelihood of Success on the Merits**

The court first considers whether Plaintiffs will likely prevail in showing RVLock's complaints to Amazon were objectively baseless and made in bad faith.  Under the "all limitations rule," an "accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent."[68]  "Literal infringement exists if each of the limitations of the asserted claim read on, that is, are found in, the accused device."[69] "Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented

---

[65] *Motion* at 19–24.

[66] *Reply* at 13.

[67] *Opposition* at 13–26.

[68] *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

[69] *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).

invention.'"[70]  Plaintiffs argue the complaints were objectively baseless because the infringement claims contradict the plain meaning of the patent.[71]  According to Plaintiffs, the following four elements described in the Patent are absent in the Accused products:

> [1.e] a lock cam [rotatably mounted in the housing and] operably connected with the key lock for rotation therewith, the lock cam having a lock cam crank arm
>
> [1.f] a first link operably connected with the lock cam crank arm
>
> [1.h] the deadbolt lock being operably connected with the first link
>
> [1.i] a motor . . . operatively connected with the first link.[72]

The court considers each element individually to assess whether RVLock makes a reasonable argument that they are present in the Accused Products.  If it is determined that RVLock fails to make an objectively reasonable argument that any one element is contained literally or by equivalence in the Accused Products, its entire claim of infringement fails and is thus unreasonable.  However, consider RVLock's arguments, the court is satisfied that its claims are reasonable for each of the four elements in question.

### A.  Lock Cam Operably Connected with the Key Lock

Plaintiffs first assert the Accused Products "do not have, as required by the claims, [1.e] 'a lock cam . . . operably connected with the key lock for rotation therewith, the lock cam having a lock cam crank arm."[73]  Citing RVLock's definition of a cam as "a structure that converts rotary motion into linear motion," Plaintiffs argue the Accused Products do not have a lock cam because the key lock is directly connected to the key lock gear.[74]  This, in turn, rotates the motor

---

[70] *Freedman Seating*, 420 F.3d at 1357 (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).

[71] *Reply* at 13.

[72] *Motion* at 21.

[73] *Motion* at 21–22 (citing *'919 Patent* at 21).

[74] *Id.*

gear.[75]  Thus, the key lock gear does not convert rotary motion into linear motion.[76]

Additionally, Plaintiffs contend the motor gear is not a lock cam because the motor gear is driven

by a motor (as opposed to a key lock), and the motor gear is distinct and separate from the key

lock gear.[77]  In contrast, RVLock argues the motor gear is in fact the required lock cam, as it (1)

has a crank arm, (2) converts the rotary motion to linear motion moving the deadbolt, and (3) is

operably connected with the key lock because it simultaneously turns when the key is turned

(with the key lock gear rotating in between).[78]

The court concludes RVLock presents an objectively reasonable argument that the

Accused Products contain the components of element [1.e.].  The element has four components:

(1) a lock cam, (2) with a crank arm, (3) operably connected with the key lock, (4) for rotation

therewith.  All four components are arguably present in the Accused Products.  The components

function in the same manner as described in the Patent, with the motor gear/lock cam converting

the rotational motion of the turning keylock to linear motion sliding the deadbolt.  While

Plaintiffs may ultimately prevail if the court finds the Patent's language choices of "lock cam"

and "rotation therewith" imply a direct connection between the lock cam and the key lock,[79] such

a conclusion is by no means obvious or certain considering the inclusion of the broad term

"operably connected with." [80]  A reasonable litigant could realistically expect to prevail in

arguing that the Patent also covers designs with an indirect connection between the lock cam and

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Opposition* at 14–19.

[79] *See Reply* at 3–5.

[80] *'919 Patent* at 21.

key lock.  Accordingly, the court finds RVLock's claims regarding element [1.e] are objectively reasonable.

### B.  First Link operatively Connected to the Lock Cam and Deadbolt

Plaintiffs next argue the Accused Products "do not have, as required by the claims, [1.f] 'a first link operatively connected with the lock cam crank arm' or [1.h] 'the deadbolt lock being operably connected with the first link."[81]  According to Plaintiffs, the Accused Products do not possess a first link at all, as the motor gear's crank arm connects directly to the deadbolt.[82]  On the other hand, RVLock contends the Accused Products do contain a first link, as it is directly integrated into opposite ends of the same elongated structure as the deadbolt.[83]

The court finds RVLock's assertion that the Accused Products contain elements [1.f] and [1.h] reasonable.  Plaintiffs contend the single deadbolt structure cannot satisfy two different elements of the Patent ([1.g] the deadbolt and [1.h] the first link). [84]  In support, they cite *Becton, Dickinson & Co. v. Tyco Healthcare Group., LP*,[85] in which the Federal Circuit explained, "[w]here a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention."[86]  However, RVLock contends *Becton* does not apply here because unlike in *Becton* where an entire single structure was impermissibly claimed to satisfy two different elements, here the deadbolt and the first link are "two distinct portions of the elongated structure . . . , not the same portion."[87]  The court

---

[81] *Motion* at 23 (citing *'919 Patent* at 21).

[82] *Id.* at 23–24.

[83] *Opposition* at 19–25.

[84] *Motion* at 23–24.

[85] 616 F.3d 1249 (Fed. Cir. 2010).

[86] *Becton, Dickinson & Co.,* 616 F.3d at 1254; *see Motion* at 24.

[87] *Opposition* at 22.

finds RVLock's argument is reasonable.  Indeed, the Federal Circuit has held in multiple cases that separate components of a single structure may satisfy multiple elements when sub-differentiated.[88]

Further, even if RVLock could not realistically claim literal infringement because the single extended deadbolt structure could not be reasonably understood to be a "link," RVLock may reasonably assert infringement under the doctrine of equivalents.  Under the "function-way-result test," an accused product infringes on a patent if the differing elements "perform[] substantially the same function in substantially the same way to obtain the same result."[89]  Here, the deadbolt's extended structure contains a section away from the door edge which functions by allowing the motor gear's crank arm to apply linear force and push/pull the deadbolt in and out,[90] much the same as the function of the first link in the Patent.  Accordingly, RVLock's claim the Accused Products possess elements [1.f] and [1.h] is objectively reasonable under either literal infringement or the doctrine of equivalents.

### C.  Motor Operatively Connected with the First Link

Lastly, Plaintiffs assert that the Accused Products do not satisfy element [1.i] "a motor . . . operatively connected with the first link," as the motor in the Accused Products is connected to the motor gear and not the first link.[91]  Plaintiffs further argue that both "operably connected" (as in element [1.e]) and "operatively connected" here cannot both include indirect

---

[88] *See Intell. Prop. Dev., Inc. v. UA-Columbia Cablevision,* 336 F.3d 1308, 1320 n.9 (Fed. Cir. 2003) ("[W]e see no reason why, as a matter of law, one claim limitation may not be responsive to another merely because they are located in the same physical structure.");  *Applied Medical Res. Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings, not that they necessarily refer to two different structures.").

[89] *Nextstep, Inc v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024) (citation modified).

[90] *RVLock Initial Infringement Contentions* at 35–38.

[91] *Motion* at 24.

connections since the different words are presumed to have different meanings.[92]  RVLock, meanwhile, contends that the Patent only requires the motor to be *operatively* connected to the first link, which it is via the motor gear.[93]

The court concludes RVLock reasonably claims that the Patent also covers motors that are indirectly connected to the first link.  In the Accused Products, the indirect connection between the motor and the first link means that when the motor is engaged, it rotates the motor gear/lock cam to *operate* the first link and deadbolt.[94]  While it is possible that the difference between "operably" and "operatively" is that the former includes both direct and indirect connections between parts while the latter only covers direct connections, Plaintiffs cite no authority for why that *must* be the difference in meaning between the two separate terms.[95]  The court may ultimately conclude that both terms encompass either direct and indirect connections, with the difference between the terms lying elsewhere.  Accordingly, RVLock's claim the Accused Products contains a motor operatively connected with a first link is objectively reasonable.

Because RVLock reasonably claims that the Accused Products contain all four disputed elements, its complaints to Amazon are not objectively baseless.

### D.  Bad Faith

Plaintiffs do not establish RVLock acted in bad faith in submitting its infringement complaints to Amazon.  "[A] bad faith standard cannot be satisfied in the absence of a showing

---

[92] *Reply* at 11–12 (citing *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381–82 (Fed. Cir. 2008) (explaining "different claim terms are presumed to have different meanings")).

[93] *Opposition* at 26–27.

[94] *RVLock Initial Infringement Contentions* at 35–39.

[95] *See Reply* at 11–12.

16

that the claims asserted were objectively baseless."[96]  Because the court determines that RVLock's complaints were not objectively baseless, it cannot conclude that RVLock acted in bad faith in submitting the complaints.

### E.  Plaintiffs Do Not Show a Strong Likelihood of Success on the Merits for Infringement.

While the court concludes the *GP Industries* objectively baseless and bad faith standard applies here, the court notes that Plaintiffs do not demonstrate a strong likelihood of success on the merits of the underlying infringement claims either.  Plaintiffs seek a determination of whether the terms of the Patent cover the elements of the Accused Products before conducting fact discovery, expert discovery, and most pertinent here, a *Markman* hearing to determine the construction of the Patent's elements.[97]  Absent these important steps, and in light of RVLock's reasonable arguments in favor of a finding of infringement, the court is unable to conclude at this stage that Plaintiffs have met the high burden of showing a strong likelihood of success on the merits of the underlying infringement claim to obtain a disfavored injunction.

Because Plaintiffs do not establish a strong likelihood of success on the merits of their claims, the court does not consider whether they have met the other requirements necessary to obtain a preliminary injunction.

### CONCLUSION

For the reasons explained above, the court DENIES Plaintiffs' Motion for a Preliminary Injunction.[98]

---

[96] *GP Indus.*, 500 F.3d at 1374.

[97] *See EMI Grp. N. Am. v. Intel Corp.*, 157, F.3d 887, 891–892 (Fed. Cir. 1998) ("Construction of the claims by the trial court is often conducted upon a preliminary evidentiary hearing, called a Markman hearing in homage to the decision, that established that this step must be performed by the judge, not the jury . . .  At the *Markman* hearing the district court hear[s] extensive testimony from the technical experts on the various issues and arguments concerning the scope of the claims in the context of the accused structures, and ma[kes] findings thereon in construing the claims."

[98] Dkt. 55.

SO ORDERED this 1st day of June, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge